# EXHIBIT A

## Case Information

16A61877 | James Braude, M.D. VS Emory/Saint Jospeh's, Inc.,Emory Healthcare, Inc.ET AL

Case Number | Court | File Date
16A61877 | State Court | 10/13/2016
Case Type | Case Status |
Personal Injury | E-File Open |

## Party

Plaintiff
Braude, James Steven, M.D.

Address
2170 Defoor Hills Road
Atlanta GA 30318

Active Attorneys ▾

Lead Attorney
Bird, William Q
Retained

Defendant
Emory/Saint Jospeh's, Inc.

Address
C/O Reg. Agent Jane Jordan
201 Dowman Drive
Atlanta GA 30322

Defendant
Emory Healthcare, Inc.

Address

C/O Reg. Agent Jane Jordan
201 Dowman Drive
Atlanta GA 30322

Defendant

Intuitive Surgical Inc.

**Address**
c/o CT Corporation System
1201 Peachtree Street, NE
Atlanta GA 30361

Defendant

Intuitive Surgical Operations, Inc.

**Address**
c/o CT Corporation Systems
1201 Peachtree Street
Atlanta GA 30361

Defendant

Murphy, Douglas A., M.D.

**Address**
3734 Vermont Place, NE
Atlanta GA 30319

## Events and Hearings

10/13/2016 General Civil Information Form ▾

Comment
General Civil Case Filing Information

10/13/2016 Complaint ▾

Comment
**Complaint**

10/13/2016 Summons ▼

Comment
Summons - Emory/Saint Joseph's Inc.

10/13/2016 Summons ▼

Comment
Summons - Emory Healthcare, Inc.

10/13/2016 Summons ▼

Comment
Summons - Intuitive Surgical, Inc.

10/13/2016 Summons ▼

Comment
Summons - Intuitive Surgical Operations, Inc.

10/13/2016 Summons ▼

Comment
Summons - Douglas A. Murphy, MD

10/13/2016 Interrogatories ▼

Comment
Interrogatories to Emory/Saint Joseph's, Inc.

10/13/2016 Interrogatories ▼

Comment
Interrogatories to Emory Healthcare, Inc.

10/13/2016 Interrogatories ▼

Comment
Interrogatories to Intuitive Surgical, Inc.

10/13/2016 Interrogatories ▼

Comment
Interrogatories to Intuitive Surgical Operation, Inc.

10/13/2016 Interrogatories ▾

Comment
Interrogatories to Douglas A. Murphy, M.D.

10/13/2016 Request for Admissions ▾

Comment
Request for Admissions to Intuitive Surgical, Inc.

10/13/2016 Request for Admissions ▾

Comment
Request for Admissions to Intuitive Surgical Operations, Inc.

10/13/2016 Request for Admissions ▾

Comment
Request for Admissions to Emory/Saint Joseph's, Inc.

10/13/2016 Request for Admissions ▾

Comment
Request for Admissions to Emory Healthcare, Inc.

10/13/2016 Request for Admissions ▾

Comment
Request for Admissions to Douglas A. Murphy, M.D.

10/13/2016 Request for Productions of Documents ▾

Comment
Request for Production of Documents to Intuitive Surgical Operations, Inc.

10/13/2016 Request for Productions of Documents ▾

Comment
Request for Production of Documents to Intuitive Surgical, Inc.

10/13/2016 Request for Productions of Documents ▾

Comment
Request for Production of Documents to Emory/Saint Joseph's, Inc.

10/13/2016 Request for Productions of Documents ▾

Comment
Request for Production of Documents to Emory Healthcare Inc.

10/13/2016 Request for Productions of Documents ▾

Comment
Request for Production of Documents to Douglas A. Murphy, M.D.

10/13/2016 E Filed Open

## Financial

**IN THE STATE COURT OF DEKALB COUNTY**
**STATE OF GEORGIA**

JAMES STEVEN BRAUDE, M.D.,    )
    )
        Plaintiff,    )
    )    CIVIL ACTION
v.    )    FILE NO. 16A61877
    )
EMORY/SAINT JOSEPH'S, INC.,    )    __JURY TRIAL DEMANDED__
EMORY HEALTHCARE, INC.,    )
INTUITIVE SURGICAL, INC.,    )
INTUITIVE SURGICAL OPERATIONS,    )
INC., DOUGLAS A. MURPHY, M.D., and )
JOHN DOES 1-10,    )
    )
        Defendants.    )

## COMPLAINT

Plaintiff James Steven Braude, M.D. hereby files the following Complaint against the above-named Defendants:

### PARTIES, JURISDICTION, AND VENUE

1.

Plaintiff is a citizen and resident of the State of Georgia.

2.

Defendant Emory/Saint Joseph's, Inc. is a Georgia professional corporation capable of being sued in Georgia and subject to the jurisdiction of this Court.

3.

Defendant Emory/Saint Joseph's, Inc.'s principal office address is c/o Emory Healthcare, Inc., WHSCAB, Room 400, 1440 Clifton Road, NE, Atlanta, Georgia 30322, and it may be served with process in DeKalb County, Georgia, upon its registered agent, Jane Jordan, 201 Dowman Drive, 101 Administration Building, Atlanta, Georgia 30322.

4.

Defendant Emory Healthcare, Inc. is a Georgia professional corporation capable of being sued in Georgia and subject to the jurisdiction of this Court.

5.

Defendant Emory Healthcare, Inc.'s principal office address is 201 Dowman Drive, NE, 102 Administration Building, Atlanta, Georgia 30322-1018, and it may be served with process in DeKalb County, Georgia, upon its registered agent, Jane Jordan, 201 Dowman Drive, 101 Administration Building, Atlanta, Georgia 30322.

6.

Defendant Intuitive Surgical, Inc. is a corporation incorporated under the laws of the State of Delaware with its principal place of business located at 1020 Kifer Road, Sunnyvale, California 94086.

7.

Defendant Intuitive Surgical, Inc. may be served with process in Fulton County, Georgia, through its registered agent, C T Corporation System, 1201 Peachtree Street, NE, Fulton County, Atlanta 30361.

8.

Defendant Intuitive Surgical Operations, Inc. is a corporation incorporated under the laws of the State of Delaware with its principal place of business located at 1020 Kifer Road, Sunnyvale, California 94086.

9.

Defendant Intuitive Surgical Operations, Inc. may be served with process in Fulton County, Georgia, through its registered agent, C T Corporation System, 1201 Peachtree Street,

NE, Fulton County, Atlanta 30361.

10.

Defendant Douglas A. Murphy, M.D. is and was at all times material hereto a physician licensed to practice medicine in the State of Georgia.

11.

Defendant Murphy is subject to the jurisdiction of this Court and may be personally served with process in accordance with O.C.G.A. § 9-11-4.

12.

Upon information and belief, Defendant Murphy resides in Fulton County, Georgia, at 3734 Vermont Place, NE, Atlanta, Georgia 30319, and may be served with process at that address.

13.

At all times material hereto, John Does 1-10 were engaged in the business of designing, manufacturing, marketing, distributing, selling and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, instrument(s) used at Saint Joseph's Hospital of Atlanta during Plaintiff's mitral valve repair surgery performed on June 15, 2015.

14.

Jurisdiction is proper in the State Court of DeKalb County.

15.

Venue is proper in the State Court of DeKalb County.

**FACTS**

16.

Dr. Braude re-alleges the allegations in the foregoing paragraphs as if they are fully set forth herein.

17.

Defendants Intuitive Surgical, Inc. and Intuitive Surgical Operations, Inc. (hereinafter referred to collectively as the "Intuitive Defendants") designed, manufactured, marketed, distributed, sold, and/or introduced into interstate commerce one or more instruments used to perform mitral valve repair surgery on Plaintiff at Saint Joseph's Hospital of Atlanta on June 15, 2016 (hereinafter referred to singularly or collectively as "the Instrument").

18.

Defendants Emory/Saint Joseph's, Inc. and Emory Healthcare, Inc. (hereinafter referred to collectively as the "Emory Defendants") purchased, leased, or otherwise acquired the Instrument from the Intuitive Defendants to be used at Saint Joseph's Hospital of Atlanta in the performance of surgeries, including the mitral valve repair surgery performed on Plaintiff on June 15, 2016.

19.

Defendant Murphy is a heart surgeon employed by Defendant Emory/Saint Joseph's, Inc. and/or Defendant Emory Healthcare, Inc.

20.

Defendant Murphy used the Instrument in the performance of surgeries at Saint Joseph's Hospital of Atlanta, including mitral valve repair surgeries.

21.

On June 15, 2015, Defendant Murphy used the Instrument to perform mitral valve repair surgery on Plaintiff at Saint Joseph's Hospital of Atlanta.

22.

During this surgery, metal particles (hereinafter sometimes referred to as "metallic microemboli") from the Instrument were discharged, introduced into Plaintiff's bloodstream, and ultimately traveled to and became lodged in Plaintiff's brain.

23.

An MRI of Plaintiff's brain performed prior to his June 15, 2015 surgery did not show any evidence of metallic microemboli in his brain.

24.

An MRI of Plaintiff's brain performed after his June 15, 2015 surgery showed findings consistent with metallic microemboli.

25.

Since his June 15, 2015 surgery, Plaintiff has suffered and will continue to suffer physical, neurological, and mental effects, including but not limited to emotional distress, of having metal particles in his brain, as well as the cost of medical expenses related to care necessary to address those effects. Plaintiff is also anticipated to lose future wages.

26.

If Intuitive Defendants had designed the Instrument properly, metal particles would not have discharged from the Instrument during Plaintiff's surgery and lodged in Plaintiff's brain.

27.

If Intuitive Defendants had manufactured the Instrument properly, metal particles would

not have discharged from the Instrument during Plaintiff's surgery and lodged in Plaintiff's brain.

28.

Prior to Plaintiff's mitral valve repair surgery on June 15, 2015, all Defendants knew or had reason to know of defects in the Instrument, including but not limited to that it discharged or had the potential to discharge metal particles during use.

29.

Prior to Plaintiff's mitral valve repair surgery on June 15, 2015, all Defendants knew or had reason to know of defects in the Instrument, including but not limited to that artifacts consistent with metallic microemboli appeared on brain MRIs of patients following use of the Instrument to perform mitral valve repair procedures.

30.

Prior to Plaintiff's mitral valve repair surgery on June 15, 2015, all Defendants knew and/or had reason to know that the Instrument was not safe and was unreasonably dangerous for the patients on whom it was used, including Plaintiff.

31.

None of the Defendants warned or otherwise communicated in any way to Plaintiff, or those it knew or had reason to know would be using the Instrument on Plaintiff, that the Instrument was defective, unsafe, and unreasonably dangerous.

32.

Following Plaintiff's June 15, 2015 surgery, Defendants were informed of the MRI of Plaintiff's brain performed after said surgery that showed findings consistent with metallic microemboli.

33.

Following Plaintiff's June 15, 2015 surgery, Defendants were informed of MRIs of the brains of other patients upon whom the Instrument was used to perform mitral valve repair surgery at Saint Joseph's Hospital of Atlanta in June 2015 that also showed findings consistent with metallic microemboli.

34.

Thereafter, Defendants performed and/or participated in studies involving surgeries on animals using the Instrument. Defendants failed to share the complete findings of these studies, as well as the complete information and investigation that they have relating to these studies.

35.

Upon information and belief, the studies performed by and/or participated in by Defendants revealed that, following surgeries performed using the Instrument, metallic microemboli appeared in the brains of the animals that underwent said surgery.

36.

Given the MRI of Plaintiff's brain performed after his June 15, 2015 surgery that showed findings consistent with metallic microemboli, and the subsequent studies referenced in Paragraphs 34 and 35, above, Defendants knew or had reason to know that use of the Instrument during Plaintiff's surgery did in fact introduce metallic microemboli into his brain.

37.

Following the studies referenced in Paragraphs 34 and 35, above (and perhaps earlier), all Defendants knew or had reason to know of defects in the Instrument, including but not limited to that it discharged or had the potential to discharge metal particles during use.

38.

Following the studies referenced in Paragraphs 34 and 35, above (and perhaps earlier), all Defendants knew or had reason to know of defects in the Instrument that caused metallic microemboli to be introduced into the brains of surgical patients.

39.

Following the studies referenced in Paragraphs 34 and 35, above, all Defendants knew and/or had reason to know that the Instrument was not safe and was unreasonably dangerous for surgical patients.

40.

Following the studies referenced in Paragraphs 34 and 35, above, neither Defendant Murphy nor the Emory Defendants informed or otherwise notified Plaintiff that use of the Instrument during Plaintiff's June 15, 2015 surgery did in fact introduce metallic microemboli into his brain.

41.

Indeed, following the studies referenced in Paragraphs 34 and 35, above, Defendant Murphy and the Emory Defendants have denied having knowledge and have not publically admitted that that use of the Instrument during Plaintiff's June 15, 2015 surgery did in fact introduce metallic microemboli into his brain.

42.

Upon information and belief, Defendant Murphy and the Emory Defendants continue to employ the Instrument to perform surgeries, including mitral valve repair surgeries, on patients at Saint Joseph's Hospital of Atlanta.

**COUNT ONE**
**STRICT LIABILITY: DEFECTIVE DESIGN**
(INTUITIVE DEFENDANTS AND JOHN DOES 1-10)

43.

Plaintiff re-alleges the foregoing paragraphs as if they are fully set forth herein.

44.

The Intuitive Defendants and John Does 1-10 designed, manufactured, marketed, distributed, sold and/or introduced into interstate commerce the Instrument, which the Intuitive Defendants and John Does 1-10 knew would be used on patients, including Plaintiff.

45.

At the time the Instrument was used on Plaintiff, it was defective in design and unreasonably dangerous.

46.

Plaintiff's healthcare providers used the Instrument in a manner the Intuitive Defendants and John Does 1-10 reasonably anticipated.

47.

The Instrument was used without changes or alterations.

48.

Plaintiff was unaware of the dangerous propensities of the Instrument until well after its use during his June 15, 2015 surgery and onset of his subsequent injuries.

49.

The Intuitive Defendants and John Does 1-10 could reasonably be expected to foresee, and be responsible for, injuries to persons who were injured as a result of the design defect in the Instrument and instruments like it, including Plaintiff.

50.

Plaintiff is an individual to whom injury resulting from a defectively designed instrument such as the Instrument is reasonably foreseeable.

51.

As a direct and proximate result of the Instrument's defective design, Plaintiff has suffered injuries and damages, including but not limited to the lodging of metal particles in his brain, and physical, neurological, and mental effects therefrom, including but not limited to emotional distress. Plaintiff has also incurred medical expenses and is anticipated to incur future medical expenses and lose future wages as a result of the Instrument's defective design.

## COUNT TWO
## STRICT LIABILITY:  DEFECTIVE MANUFACTURING
(INTUITIVE DEFENDANTS AND JOHN DOES 1-10)

52.

Plaintiff re-alleges the allegations above Count One as if they are fully set forth herein.

53.

The Intuitive Defendants and John Does 1-10 designed, manufactured, marketed, distributed, sold and/or introduced into interstate commerce the Instrument, which the Intuitive Defendants and John Does 1-10 knew would be used on patients, including Plaintiff.

54.

At the time the Instrument was manufactured and sold to Plaintiff's healthcare providers and used on Plaintiff, it was defectively manufactured and unreasonably dangerous.

55.

The defective condition made the Instrument unreasonably dangerous, and the defective condition existed at the time the product left the control of the Intuitive Defendants' and/or John Does 1-10.

56.

Plaintiff's injuries and damages resulted from the defective condition of the Instrument used in the performance of his mitral valve repair surgery on June 15, 2015.

57.

Plaintiff's healthcare providers used the Instrument in a manner the Intuitive Defendants and John Does 1-10 reasonably anticipated.

58.

The Instrument was used without changes or alterations.

59.

Plaintiff was unaware of the dangerous propensities of the Instrument until well after its use during his June 15, 2015 surgery and onset of his subsequent injuries.

60.

The Intuitive Defendants and John Does 1-10 could reasonably be expected to foresee, and be responsible for, injuries to persons, including Plaintiff, who were injured as a result of the manufacturing defect in the Instrument.

61.

Plaintiff is an individual to whom injury resulting from a defectively manufactured instrument such as the Instrument is reasonably foreseeable.

62.

As a direct and proximate result of the Instrument's defective manufacturing, Plaintiff has suffered injuries and damages, including but not limited to the lodging of metal particles in his brain, and physical, neurological, and mental effects therefrom, including but not limited to emotional distress. Plaintiff has also incurred medical expenses and is anticipated to incur future medical expenses and lose future wages as a result of the Instrument's defective manufacturing.

**COUNT THREE**
**NEGLIGENT DESIGN**
(INTUITIVE DEFENDANTS AND JOHN DOES 1-10)

63.

Plaintiff re-alleges the allegations above Count One as if they are fully set forth herein.

64.

In the regular course of business, the Intuitive Defendants and John Does 1-10 designed, produced, manufactured, and injected into the stream of commerce the Instrument, which they knew would be used on patients, including Plaintiff.

65.

At the time the Instrument was manufactured and sold to be used in Plaintiff's June 15, 2015 surgery, it was defective in design and unreasonably dangerous, subjecting those it was used on to risks of harm which exceeded its benefits.

66.

Plaintiff was unaware of the dangerous propensities of the Instrument until well after its use during his June 15, 2015 surgery and onset of his subsequent injuries.

67.

Plaintiff's healthcare providers used the Instrument in a manner the Intuitive Defendants and John Does 1-10 reasonably anticipated.

68.

The Instrument was used without changes or alterations.

69.

The Intuitive Defendants and John Does 1-10 had a duty to exercise reasonable care regarding the design, manufacture, and/or distribution of the Instrument into the stream of commerce, including a duty to assure that their products did not pose a significantly increased risk of bodily harm and adverse events.

70.

In designing and manufacturing the Instrument, the Intuitive Defendants and John Does 1-10 failed to exercise the ordinary care that a careful and prudent medical device manufacturer would exercise in the same or similar circumstances.

71.

As a direct and proximate result of the Instrument's negligent design, Plaintiff has suffered injuries and damages, including but not limited to the lodging of metal particles in his brain, and physical, neurological, and mental effects therefrom, including but not limited to emotional distress. Plaintiff has also incurred medical expenses and is anticipated to incur future medical expenses and lose future wages as a result of the Instrument's defective design.

## COUNT FOUR
## NEGLIGENT MANUFACTURING
(INTUITIVE DEFENDANTS AND JOHN DOES 1-10)

72.

Plaintiff re-alleges the allegations above Count One as if they are fully set forth herein.

73.

In the regular course of business, the Intuitive Defendants and John Does 1-10 designed, produced, manufactured, and injected into the stream of commerce the Instrument, which they knew would be used on patients, including Plaintiff.

74.

At the time the Instrument was manufactured and sold to be used on Plaintiff and actually used on Plaintiff, it had an unreasonably dangerous manufacturing defect, subjecting users to risk of harm which exceeded its benefits.

75.

Plaintiff's healthcare providers used the Instrument in a manner the Intuitive Defendants reasonably anticipated.

76.

The Instrument was used without changes or alterations.

77.

Plaintiff was unaware of the dangerous propensities of the Instrument until well after its use during his June 15, 2015 surgery and onset of his subsequent injuries.

78.

The Intuitive Defendants and John Does 1-10 had a duty to exercise reasonable care regarding the design, manufacture, and/or distribution of the Instruments into the stream of

commerce, including a duty to assure that their products did not pose a significantly increased risk of bodily harm and adverse events.

79.

In manufacturing the Instrument, the Intuitive Defendants and John Does 1-10 failed to exercise the ordinary care that a careful and prudent medical device manufacturer would exercise in the same or similar circumstances.

80.

As a direct and proximate result of the Instrument's negligent manufacturing, Plaintiff has suffered injuries and damages, including but not limited to the lodging of metal particles in his brain, and physical, neurological, and mental effects therefrom, including but not limited to emotional distress. Plaintiff has also incurred medical expenses and is anticipated to incur future medical expenses and lose future wages as a result of the Instrument's defective manufacturing.

**COUNT FIVE**
**NEGLIGENT FAILURE TO WARN**
(ALL DEFENDANTS)

81.

Plaintiff re-alleges the allegations above Count One as if they are fully set forth herein.

82.

At all times relevant hereto, Defendants knew or had reason to know that the Instrument was defective and unsafe for surgical patients, including Plaintiff.

83.

Defendants had a duty to provide adequate and reasonable warnings regarding defects and safety issues relating to use of the Instrument in the performance of surgeries, including the

mitral valve repair surgery performed on Plaintiff on June 15, 2015.

84.

Defendants breached their duty to provide adequate and reasonable warnings regarding the defect in the Instrument that made it unsafe by failing to warn those they knew or had reason to know would be using the Instrument or have the Instrument used on them.

85.

Defendants knew or should have known that surgical patients such as Plaintiff could have metal particles from the Instrument introduced into their brains and suffer injury as a result of Defendants' failure to warn them, as well as those that they knew or had reason to know would be using the Instrument.

86.

As a direct and proximate result of the Defendants' negligent failure to warn, Plaintiff has suffered injuries and damages, including but not limited to the lodging of metal particles in his brain, and physical, neurological, and mental effects therefrom, including but not limited to emotional distress. Plaintiff has also incurred medical expenses and is anticipated to incur future medical expenses and lose future wages as a result of the Defendants' negligent failure to warn.

## COUNT SIX
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (ALL DEFENDANTS)

87.

Plaintiff re-alleges the allegations above Count One as if they are fully set forth herein.

88.

Plaintiff suffered a physical injury due to the negligence of the Defendants in that the Defendants' negligence, as described herein, caused him to suffer the lodging of metal particles

in his brain.

89.

The physical impact of metal particles lodging into his brain caused physical injury to Plaintiff, which has resulted in neurological and mental effects, including but not limited to emotional distress.

**COUNT SEVEN**
**BREACH OF FIDUCIARY DUTY**
(DEFENDANT MURPHY AND THE EMORY DEFENDANTS)

90.

Plaintiff re-alleges the allegations above Count One as if they are fully set forth herein.

91.

Defendant Murphy and the Emory Defendants shared a confidential relationship with Plaintiff within the meaning of O.C.G.A. § 23-2-58 and thus owed a fiduciary duty to Plaintiff to inform him of any injury or negligent mistreatment occurring during or as a result of his June 15, 2015 mitral valve repair surgery at Saint Joseph's Hospital of Atlanta.

92.

Defendant Murphy and the Emory Defendants breached the fiduciary duty they owed to Plaintiff by failing to disclose to him the injury and negligent mistreatment that occurred during or as a result of his June 15, 2015 mitral valve repair surgery at Saint Joseph's Hospital of Atlanta.

93.

Defendant Murphy and the Emory Defendants further breached the fiduciary duty they owed to Plaintiff by falsely denying their knowledge that use of the Instrument during Plaintiff's June 15, 2015 surgery did in fact introduce metallic microemboli into his brain.

94.

Defendant Murphy and the Emory Defendants' breach(es) of the fiduciary duty they owed to Plaintiff caused Plaintiff injuries and damages, including but not limited to emotional distress.

## COUNT EIGHT
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(ALL DEFENDANTS)

95.

Plaintiff re-alleges the allegations above Count One as if they are fully set forth herein.

96.

Defendants' actions demonstrate intentional and/or reckless conduct that is extreme and outrageous.

97.

As a direct and proximate result of the Defendants' intentional and/or reckless conduct, Plaintiff has suffered injuries and damages, including but not limited to the lodging of metal particles in his brain, and physical, neurological, and mental effects therefrom, including but not limited to emotional distress.

## PUNITIVE DAMAGES
(ALL DEFENDANTS)

98.

Plaintiff re-alleges the allegations in the foregoing paragraphs and each of them as if they are fully set forth herein.

99.

Defendants' actions demonstrate willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences sufficient to warrant an award of punitive and exemplary damages.

**WHEREFORE**, Plaintiff demands judgment in excess of ten thousand dollars ($10,000.00) in an amount to be determined by the enlightened consciousness of an unbiased jury, including all of Plaintiff's medical expenses necessarily incurred, Plaintiff's future lost wages, Plaintiff's physical pain and suffering, Plaintiff's mental pain and suffering (including but not limited to emotional distress), and all other relief authorized under Georgia law. Plaintiff asks further that all costs be cast against the Defendants and for a trial by jury.

Respectfully submitted,

/s/ **William Q. Bird**
William Q. Bird
Georgia State Bar No. 057900
WQB@birdlawgroup.com
Kristen L. Beightol
Georgia State Bar No. 425814
KLB@birdlawgroup.com
Paul I. Hotchkiss
Georgia State Bar No.
PIH@birdlawgroup.com
Alexandria S. Cash
Georgia State Bar No. 290667
ASC@birdlawgroup.com

STATE COURT OF
DEKALB COUNTY, GA.
10/13/2016 10:49:40 AM
E-FILED
BY: Michelle Cheek

**BIRD LAW GROUP, P.C.**
2170 Defoor Hills Road
Atlanta, Georgia  30318
(404) 873-4696

/s/ **John W. Crongeyer**
John W. Crongeyer
Georgia State Bar No. 197267
Jw552020@gmail.com

**CRONGEYER LAW FIRM, P.C.**
2170 Defoor Hills Road
Atlanta, Georgia 30318
(404) 542-6205

*Attorneys for Plaintiff*